## THE WOODS AT WAYNE HOMEOWNERS ASSOCIATION

v.

## GAMBONE BROTHERS CONSTRUCTION COMPANY, INC., Gambone Brothers Development Company and Township of Upper Merion

Appeal of: Gambone Brothers Construction Company, Inc. and Gambone Brothers Development Company.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2005.

Decided Feb. 24, 2006.

Arthur L. Jenkins, Jr., Norristown, for appellants.

James J. Greenfield, Radnor, for appellee, the Woods at Wayne Homeowners Association.

Alan E. Boroff, Blue Bell, for appellee, Township of Upper Merion.

Before PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Gambone Brothers Construction Company, Inc. and Gambone Brothers Development Company (collectively Gambone) appeal a preliminary injunction issued by the Court of Common Pleas of Montgomery County (trial court) upon request of the Township of Upper Merion. The mandatory preliminary injunction directs Gambone to stabilize retaining walls that it constructed at a townhouse development known as The Woods at Wayne. The trial court found that one of the retaining walls, positioned within a few feet of adjacent townhouses, was in imminent danger of collapse, which could cause structural dam-

age to the homes and serious bodily injury to their occupants. In this appeal, we consider whether these circumstances warranted the issuance of a preliminary objection.

## BACKGROUND

In November 1996, the Township approved a subdivision and land development plan proposed by Gambone for the construction of a planned residential community known as The Woods at Wayne. The development consists of clusters of adjoining townhouses on approximately 12 acres of land. Because the land is sloping, Gambone excavated into the slopes to make space adequate for the rows of townhouses. The cuts into the hill were then secured by retaining walls. At the south side of the development, the cut was made into a steep slope that required the construction of a retaining wall 12 to 14 feet in height and 500 feet in length. A postage stamp backyard separates this tall retaining wall from the rear wall of the townhouses. At the top of the retaining wall a chainlink fence was placed, presumably to protect persons from falling into the rear yards of the townhouses.

A homeowners association was established by Gambone and approved by the Township;[1] the terms governing the Association are set forth in a Declaration. In July 1999, when construction was complete and 60% of the homes had been sold, the association was accepted by the homeowners. Thereafter, Gambone transferred ownership of all common areas in the development, including the retaining walls, to The Woods at Wayne Homeowners Association (Association).

The Association surveyed the residents of The Woods to collect information about construction issues. Several homeowners responded that the tall retaining wall on the south side of the development was bulging. The Association then held several meetings with Gambone and the Township to discuss the matter. According to Brian Noll, President of the Association, Gambone's representative assured those in attendance that "whatever was inappropriate would be corrected." Notes of Testimony, February 11, 2005, at 26 (N.T. ——); Reproduced Record at 97a (R.R. ——). On December 27, 1999, the Association sent a letter to Gambone identifying all the construction problems identified by the owners and demanding their correction. Gambone made no repairs.

In March 2000, a section of the tall retaining wall in the south part of the development collapsed, causing an avalanche of dirt and blocks that filled the rear deck of the adjacent townhouse and crashed into the home of John Swift. The force was enough to leave a trail of shattered glass twelve feet into Swift's townhouse. Gambone rebuilt the collapsed section of the retaining wall; repaired the damage to the interior of Swift's home; and replaced Swift's deck and air conditioning equipment.

In spite of this rebuilding, the remainder of the wall continued to bulge and to lean noticeably. Other, much shorter, retaining walls located at various places in the development also began to exhibit problems. Schoor DePalma, an engineering firm re-

---

1. The Association is governed by a Declaration dated January 30, 1997, and approved by the Township. Supplemental Reproduced Record at 196a–234a (Supp. R.R. ——). Section 10.8 of the Declaration states: "Nothing shall be altered or constructed in or removed from the Common Area except upon the written consent of the Association and ... Township." Supp. R.R. 216a. Section 1.5 of the Declaration defines "common area" as "all of the open space areas, detention basin and storm water management facilities...." Supp. R.R. 197a. The retaining walls fall within this definition of common area.

tained by the Township, investigated the retaining walls at The Woods. It offered the following analysis and recommendation:

> We are of the opinion that the wall is no longer in safe condition and is beyond repair. It is also our opinion that the wall will collapse in the near future, especially after heavy rainfalls when additional water pressure may build up behind the wall. . . . *For the sake of public safety, we recommend that the wall be demolished and a new reinforced earth wall be constructed in its place immediately.*
>
> *Alternatively, if Gambone wishes to evaluate the potential remedial options, the wall should be immediately secured utilizing some form of bracing or other means.*

Technical Memorandum, May 6, 2004, at 5; R.R. 13a (emphasis in original).

On June 1, 2004, the Township initiated a suit in equity against Gambone along with a petition for a preliminary injunction to require Gambone to take immediate steps to brace the entire length of the wall that had collapsed. The Township also sought a permanent injunction to require Gambone to construct a new retaining wall that conformed to the Township's specifications.

In response, on June 18, 2004, Gambone suggested a remedy to the Township, called the "Gambone Plan," that would secure the retaining wall with a system of "soil anchors." The system would consist of 12–foot long cables that would connect a 4–foot square steel plate on the face of the wall to an anchor in the soil behind the wall. Gambone believed that 120 to 200 soil anchors would secure the wall and provide a permanent solution. However, the Township's engineer, Schoor DePalma, identified a number of flaws in the proposal, believing that longer cables and larger steel plates would be needed.

In addition to intervening in the Township's claim for injunctive relief, the Association filed its own suit in equity against Gambone in September 2004. It alleged, *inter alia*, that

> Gambone negligently and/or recklessly designed and built the retaining walls, and/or failed to follow design drawings that Gambone filed with the Township, in such a manner that the walls were defective, were likely to fail, and were incapable of serving the function for which they were purportedly designed and approved.

Association Complaint at ¶ 7; R.R. 44a. The Association requested that Gambone be ordered to redesign and reconstruct all of the retaining walls in The Woods. It did not believe that the Gambone Plan would provide an appropriate permanent solution, for the reasons identified by Schoor DePalma. In addition, the anchors and steel plates would not be aesthetically pleasing. The Association named the Township as a defendant, believing it to be an indispensable party.[2]

Gambone filed two sets of preliminary objections, seeking dismissal of both complaints. It asserted that the parties were

---

**2.** The Association named the Township as a defendant and indispensable party in its equity complaint because,

> [the Township] has asserted its police power with regard to safety issues on [the Association]'s property in a separate action brought by the Township against Gambone . . . and pending before this court . . .; and

> because the Township controls funds escrowed by . . . Gambone to ensure proper completion of common improvements in [The Woods]; and the escrowed funds can be applied to correct the design and construction defects described herein.

Association Complaint at ¶ 3; R.R. 43a.

bound by a provision in the Declaration that required all construction disputes to be submitted to alternative dispute resolution.[3] Gambone acknowledged that the Declaration allowed an exception to arbitration for injunctive relief but argued that the complaints did not seek "true injunctive relief." R.R. 56a. Gambone also contended that the Association had no right to pursue a cause of action "of any nature whatsoever having to do with a retaining wall...." R.R. 28a, 57a. The trial court has not yet disposed of Gambone's preliminary objections.

The trial court consolidated the complaints of the Township and the Association.[4] On February 11, 2005, the trial court held a hearing on the consolidated petitions for a mandatory preliminary injunction. John Swift, whose home was damaged in 2000 by the collapsed wall, described the incident. Swift also produced photographs showing that the large retaining wall was still bulging and wavering in spite of Gambone's repairs after the collapse. Swift explained that the movement of the wall had moved the fence at the top of the wall, causing its post caps to pop off. The movement was most evident at the point where the wall is at its tallest, i.e., 14 feet.

Brian Noll, the Association's president, testified that at various times since 1999, Gambone's representative had pledged to repair all of the retaining walls in The Woods. Although Gambone had rebuilt the portion of the large retaining wall that collapsed in March 2000, no other repairs had yet been initiated.

The Association also presented the testimony of Sameh Majid, a licensed structural engineer experienced in wall construction. Majid reviewed the reports of Schoor DePalma and found it significant that the geogrid, the plastic lacing that was placed into the hillside behind the retaining wall for support, was missing or ripped in a number of locations. In addition, the soil material behind the wall was trapping water and adding pressure to the wall. Majid examined the large retaining wall on two occasions, and between the two visits he could see "movement" and "deformation" in the wall. N.T. 47; R.R. 118a. Majid recommended replacing the wall.

Charles Davis, a general superintendent for Gambone, testified that Schoor DePalma had approved installation of soil anchors to support the large retaining wall. According to Davis, Gambone was ready, willing and able to install the soil anchor system.

On February 16, 2005, the trial court issued an order finding that "Gambone negligently and/or recklessly designed and built the retaining walls." Memorandum and Order, February 16, 2005, at 2. The trial court determined, based upon the

---

3. Section 10.20 of the Declaration provides:

 *Arbitration.* Any and all disputes arising out of or relating to the construction of a house within the Property or otherwise arising out of this Declaration shall be decided by binding arbitration as the exclusive forum for determination.... A majority decision of the arbitrators shall be controlling. Notwithstanding anything to the contrary herein, *should the Declarant or the Association choose to pursue the remedy of injunctive relief,* the *Declarant and/or the Association may pursue such relief* directly in any

 court of competent jurisdiction in the Commonwealth of Pennsylvania.
 Supp. R.R. 219a (emphasis added).

4. On October 7, 2004, the trial court ordered the consolidation of *Upper Merion Township v. Gambone Brothers Construction Co., Inc.,* No. 04–14229, with *The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Company, Inc., Gambone Brothers Development Co., and Township of Upper Merion,* No. 04–25303. Thereafter, the consolidated cases proceeded under the caption for civil action No. 04–25303.

hearing testimony and photographic evidence, "that an imminent threat exists to the health, safety and welfare of [The Woods]." *Id.* at 3. The trial court ordered Gambone to brace the large retaining wall "in such a manner that is reasonably calculated to prevent its collapse and is satisfactory to [the Association] and [the Township]." *Id.*

Following a conference with the parties on March 7, 2005, the trial court vacated its February 16, 2005, order and issued another order, later termed by the trial court as a "qualified" Agreed Order.[5] This order required Gambone to (1) reinforce and stabilize the large retaining wall; (2) submit a plan, approved by at least two civil engineers, to repair the wall using Manta Ray Earth Anchors; and (3) indemnify, defend and hold harmless the Association from any suits brought by third parties based on work performed by Gambone.[6] On March 14, 2005, the trial court limited the scope of the Agreed Order as follows:

> The [trial court's] order of March 7, 2005 deals only with that aspect of the lawsuit where an immediate danger exists ... Quick action is urgent. Although Gambone disputes equity jurisdiction, they recognize if someone were seriously hurt they would be a target defendant in a lawsuit. It is imperative that the retainage wall be reinforced before the winter thaw at which time collapse is likely. It is for this reason and the reasons set forth in the Memorandum of February 16, 2005 that the

Order of March 7, 2005 should be enforced.

Supplemental Memorandum, March 14, 2005, at 1–2.

In the early hours of May 10, 2005, a section of the large retaining wall again collapsed, causing concrete blocks to tumble into the home of Mike and Ginny Cleary.[7] The trial court judge visited the site on May 12, 2005, and issued an order on May 13, 2005, requiring Gambone to (1) complete installation of the soil anchors on all sections of the large retaining wall within thirty days; (2) complete installation of the soil anchors on the temporarily braced sections of the large retaining wall behind units 1137–1147 within three days; and (3) complete installation of soil anchors on other sections of the large retaining wall that had been enclosed by an orange plastic safety fence. In short, the trial court's preliminary injunction ordered that which had been proposed by the defendant: the Gambone Plan. Finally, the trial court required Gambone to brace all other retaining walls and to complete permanent repairs on them within sixty days.

Gambone appealed the May 13, 2005, order, prompting the trial court to issue Supplemental Memorandum No. 2 on June 22, 2005. Commenting on its prior orders, the trial court stated:

> The reason a full record has not yet been developed is because the Orders reflect precisely what Gambone has proposed and offered to perform as a solution to this problem. This is so, notwithstanding the fact that it continues to

---

5. The trial court used this language to indicate that Gambone wished to repair the wall, but wanted to do so without prejudice to its right to appeal. Supplemental Memorandum, March 7, 2005, at 1.

6. The order also required The Woods to post a bond in the amount of one hundred dollars.

7. The damage was principally to the recreation room where the Cleary's two-year old child usually spent time; fortunately, the child was not present when the incident occurred. Supplemental Memorandum No.2, June 22, 2005, at 1.

dispute the Court of Equity's jurisdiction.

* * *

In the event that the "Gambone Plan" cannot be safely implemented a Permanent Injunction hearing will have to be held at which time the Court will have to consider whether the entire wall can be replaced. As for the Court of Equity's jurisdiction, it is abundantly clear the homeowners do not have the ability to act with dispatch and repair the wall and they are not yet out of harm's way. Supplemental Memorandum No. 2, June 22, 2005, at 2–3.

Before this Court, Gambone appeals the Agreed Order of March 7, 2005, as well as those of March 14, 2005 and May 13, 2005.[8] Gambone presents two issues for our consideration. First, Gambone argues that the trial court erred in issuing a mandatory preliminary injunction. The injunction does not preserve the *status quo*; the plaintiffs can be compensated in money damages; and Gambone did nothing actionable. Second, Gambone challenges the terms of the injunction, assuming, *arguendo*, the court had a basis to issue it. Specifically, Gambone objects to having to get the Township's "seal of approval" on the bracing and to being forced to indemnify the Association against third party actions. Gambone also asserts that the Township and Association should have been required to post an injunction bond substantially larger than $100.

## STANDARDS FOR PRELIMINARY INJUNCTION

The essence of Gambone's appeal is that the trial court erred in issuing a mandatory preliminary injunction. Gambone claims that the Association had a clear remedy at law: hire another company to brace and repair the large retaining wall and then commence a negligence action against Gambone for damages.[9] Gambone further contends, somewhat contradictorily, that the Association failed to present evidence that Gambone was negligent in constructing the wall. In response, the

---

8. Gambone's appeals to this Court are dated April 5, 2005, April 11, 2005, and May 24, 2005, respectively. By order dated June 27, 2005, this Court consolidated the appeals for argument.

9. At the February 11, 2005, hearing, the Association's attorney and the trial court had the following exchange:

 Mr. Greenfield [The Association's attorney]: Gambone has previously responded to a collapse by coming onto the property with the approval of the homeowner's association which we would now be prepared to grant for the limited purposes of this preliminary injunction to make repairs.
 In fact, what we are asking for here is that [Gambone] come on to the property and embrace the law so that as we seek to find a permanent solution to the problem, we will make sure that there will be no collapse in the interim. I think that's an appropriate basis for a mandatory injunction.
 The Court: What about the argument that you have a remedy of law that you could proceed on negligence or proceed on maybe some type of breach of contract—I don't know—some implied warranty, either way, and seek damages?
 Mr. Greenfield: Your Honor, the argument as I understand it is let's wait until the wall collapses and, you know, injuries [sic] or kills somebody. That's really the issue that enables us to get an injunction here. Were it not for that—
 The Court: I think the argument is why don't—we sold you the wall, but why don't you go out—and if it is no good, why don't you go out and replace it and sue us for damages.

 * * *

 The Court: So [Gambone] is saying why don't you go and correct it and sue us for the damages.
 Mr. Greenfield: The cost of doing that for one thing [is] prohibitive.
 Trial 63–64; R.R. 126a–127a.

Township and Association argue that the injunction was necessary to prevent immediate and irreparable harm that could not be adequately compensated by damages. Further, it believes the evidence supports the trial court's finding that Gambone negligently designed and built the retaining walls, in violation of the Township's building code.

 Injunctive relief will lie where there is no adequate remedy at law. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 259, 602 A.2d 1277, 1286 (1992). A preliminary injunction preserves the *status quo* as it existed before the acts complained of, while the Court decides on the merits of permanent injunctive relief.[10] The essential prerequisites of a preliminary injunction are as follows:

(1) The injunction is necessary to prevent immediate and irreparable harm not compensable in money damages.

(2) Greater injury will result from refusing the injunction than from granting it.

(3) The injunction restores the parties to *status quo ante.*

(4) The activity sought to be restrained is actionable, and the plaintiff's right to relief is clear.

*John G. Bryant Co., Inc. v. Sling Testing and Repair, Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977). A party's right to relief is clear if the party seeking the preliminary injunction is likely to prevail on the merits of the permanent injunction. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 647, 828 A.2d 995, 1001 (2003).

 The standard of appellate review of a preliminary injunction is "any appar-

ently reasonable grounds." In *Mazzie v. Commonwealth,* 495 Pa. 128, 133, 432 A.2d 985, 988 (1981), our Supreme Court explained:

On an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [Court].

*Id.* (citations omitted). A mandatory preliminary injunction, which commands performance of some positive act to preserve the *status quo,* receives closer scrutiny than does a preliminary injunction that restrains conduct. As has been explained by the Supreme Court:

This Court has engaged in greater scrutiny of mandatory injunctions and has often stated that they should be issued more sparingly than injunctions that are merely prohibitory. *Thus, in reviewing the grant of a mandatory injunction, we have insisted that a clear right to relief in the plaintiff be established.*

*Mazzie,* 495 Pa. at 134, 432 A.2d at 988 (emphasis added).

This Court's task, therefore, is to decide whether "any reasonable grounds" exist for the injunction issued by the trial court. Gambone's brief states the issue as trial court error, asserting that the moving parties failed to meet the standards for a mandatory preliminary injunction. The argument section of Gambone's brief, however, focuses only on whether the Associa-

---

10. The *status quo ante* is that "last actual, peaceable and lawful uncontested status which preceded the pending controversy."

*Commonwealth v. Coward,* 489 Pa. 327, 342, 414 A.2d 91, 99 (1980).

tion and Township had a clear right to relief. Essentially, Gambone argues that if there was an emergency, it was the Association's responsibility to respond, not Gambone's, because the Association now owns the wall. If the Association believes Gambone's construction of the wall was actionable, it can pursue an action for damages. Further, Gambone asserts that there was no evidence, not a scintilla, that Gambone failed to build the wall with due care. Gambone Brief at 25.

We begin with Gambone's "why me?" argument. Section 1527 of The Second Class Township Code [11] authorizes a township to adopt legislation to secure the safety of persons or property within the township. [12] It did so. Section 145-33 of the Upper Merion Township Subdivision Ordinance of 1953 states that,

The Developer shall be responsible in all cases for the installation and all required improvements which shall be approved by the Township.

UPPER MERION TWP., PA., ORDINANCE 16, ch. 145 (1953). The Township named Gambone because, under its ordinance, Gambone, as the developer, was responsible for the construction of the retaining walls. Gambone also has responsibility for the walls under the common law of nuisance, which, generally, protects persons against intrusions on their enjoyment of their property. [13] Whether Gambone exercised due care in constructing the walls is of no moment in a nuisance case. [14] The person who created the nuisance, Gambone, is the one responsible for the abatement of a nuisance.

There are other reasons why Gambone was the proper defendant even though it transferred ownership of the walls to the Association. Even before the first collapse, Gambone acknowledged its responsibility to stabilize the walls, doing all nec-

---

11. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

12. Section 1527 of The Second Class Township Code specifically states,

The board of supervisors may adopt ordinances to secure the safety of persons or property within the township and to define disturbing the peace within the limits of the township.

53 P.S. § 66527.

13. Conduct that interferes with another's use or enjoyment of land is unreasonable if the responsible party fails to take necessary measures to avoid it. Failure to take that step is unreasonable and will be considered an intentionally created nuisance. 36 PENNSYLVANIA LAW ENCYCLOPEDIA, *Nuisance* § 6 (2d ed.2004); *Burr v. Adam Eidemiller, Inc.,* 386 Pa. 416, 126 A.2d 403 (1956).

Our Supreme Court has also set out the difference between a public and private nuisance.

The difference between a public and private nuisance does not depend upon the nature of the thing done but upon the question whether it affects the general public or merely some private individual or individuals....

*Phillips v. Donaldson,* 269 Pa. 244, 246, 112 A. 236, 238 (1920). Here, the retaining walls, in their present state of instability, interfere with the ability of the homeowners to enjoy their property. They are a public nuisance insofar as they pose a threat to people that visit The Woods as well as those who live there.

14. As stated in *Commonwealth v. Barnes and Tucker Company,* 455 Pa. 392, 319 A.2d 871 (1974),

The absence of facts supporting concepts of negligence, foreseeability or unlawful conduct is not in the least fatal to a finding of the existence of a common law public nuisance. The assumption that such might be the case is "based upon an entirely mistaken emphasis upon what the defendant has done rather than the result which has followed, and forgets completely the well established fact that negligence is merely one type of conduct which may give rise to a nuisance."

*Id.* at 414, 319 A.2d at 883 (quoting W. Prosser, *Law of Torts,* § 88 at 595 (3d ed.1964)).

essary repairs after each collapse.[15] Gambone's argument that the Association has an adequate remedy at law, *i.e.*, in negligence, is itself a tacit recognition that Gambone is the entity responsible for the immediate stabilization of the walls. Further, the trial court found, and we have no basis not to accept that finding, that the homeowners, either individually or as a group through the Association, lacked the ability to act with dispatch to stabilize the wall.

 This brings us to Gambone's next point, which is that the Association had available to it a negligence action that barred the trial court's exercise of equity jurisdiction. A negligence action is neither adequate nor complete in these circumstances. It provides, at best, after-the-fact relief in monetary damages while, in the meantime, the threat from a dangerous wall remains unabated. Similarly, penalties on Gambone for violating the Township's building code, assuming the existence of such penalties, are not adequate to remediate the real and present danger presented by these walls. Further, these legal remedies involve significant delay. Where irreparable harm might result before the legal remedy can be obtained, equity will provide the remedy. *Baederwood Center, Inc. v. Putney*, 390 Pa. 53, 61, 133 A.2d 836, 841 (1957). In short, the existence of other legal remedies did not displace the trial court's equitable jurisdiction because they were simply inadequate to address the imminent danger presented by the walls and the urgent need to stabilize them.

Finally, we address Gambone's argument about the evidence. The evidence is overwhelming that the walls are structurally defective. Engineers for both the Township and the Association opined that the walls were improperly constructed, noting specific problems with the placement of materials such as geogrid. The large wall has collapsed on two occasions. All of the walls continue to move and bulge. Based on this evidence, the trial court stated:

> Quick action is urgent. Although Gambone disputes equity jurisdiction, they recognize if someone were seriously hurt they would be a target defendant in a lawsuit. It is imperative that the retainage wall be reinforced before the winter thaw at which time collapse is likely.

Supplemental Memorandum, March 14, 2005, at 1–2. Indeed, greater injury would result from the injunction's refusal than from its grant.

 Gambone argues that its negligence cannot be inferred from the poor performance of the walls. Gambone's "negligence," however, is not the issue. Gambone built the walls and, therefore, has responsibility for their present instability.[16] We agree with the trial court's observation that Gambone was "negligent;" this seems apparent under *res ipsa loquitur*. However, negligence is beside the point. Conduct must be actionable to warrant equitable relief, and Gambone's conduct is actionable under several theories, only one of which is negligence. It is also actionable because the retaining walls do not meet the Township's building code and because, unstabilized, they present an

---

**15.** All parties agreed that the walls, particularly the large retaining wall, were in need of repair. While the engineers for the Township and the Association recommended that the wall be replaced, the parties eventually agreed to the Gambone Plan as the solution at

least for purposes of the preliminary injunction.

**16.** In nuisance, negligence is not a factor. *See supra*, note 14. The party that created the nuisance can be held liable even if not negligent. *Id.*

ongoing nuisance to the residents and to the public.

■ In sum, Gambone's arguments are unavailing. The Township and Association's right to relief was clear. The mandatory preliminary injunction returned the parties to the *status quo ante*, which is that state existing when the retaining walls were secure. The injunction was needed to prevent irreparable injury, such as death, not compensable in money damages. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992). The likelihood that the plaintiffs will prevail on the merits of their request for a permanent injunction is strong. *Summit Towne Centre*, 573 Pa. at 647, 828 A.2d at 1001.[17] We hold, therefore, that the trial court had reasonable grounds for its action and did not abuse its discretion.

### REASONABLENESS OF RELIEF

■ Even if the essential prerequisites of an injunction are satisfied, the court must fashion a remedy "reasonably suited to abate [the harm]." *John G. Bryant Co.*, 471 Pa. at 7, 369 A.2d at 1167. Although not well developed, Gambone's second issue appears directed at the reasonableness of the relief ordered by the trial court. Specifically, Gambone believes it is inappropriate to require Gambone to obtain the Township's and Association's "seal of approval;" to require Gambone to indemnify the Association against third party claims arising from the installation of the soil anchors; and to limit the injunction bond amount to $100.

The trial court did not order the erection of gold-plated walls with water features. It ordered exactly what Gambone

suggested—the "Gambone Plan," which was the essence of the Agreed Order. The trial court's subsequent orders simply set reasonable timetables for completion of the project, lest yet another collapse occur. Because the Township is required by ordinance to approve walls, it cannot be unreasonable to require their continued oversight. Similarly, the Association, which has retained its own expert, is in a position to evaluate the progress of the Gambone Plan. Gambone places entirely too much emphasis on the approval term. It is there to give either party standing to return to court if the project does not provide the necessary stabilization and, in any case, their approval cannot be unreasonably withheld.

The indemnification clause is also reasonable. The trial court's March 7, 2005, order states as follows:

> Gambone will indemnify, defend and hold harmless the Association from and against all suits, actions, causes of action and claims of any nature, asserted by third party property owners outside the boundaries of Woods at Wayne based upon or alleged to be based upon installation of anchors or relating to the interference with the property rights of neighboring property owners, cause or alleged to be caused by Gambone's installation of anchors.

March 7, 2005 Order at ¶ 6. Gambone claims that the indemnification extends to "any causes of action" brought by third parties. Gambone Brief at 28. It does not. It applies only to contiguous property owners who may suffer encroachments in the course of the soil anchor installation. The narrowly drawn indemnification is a fair and reasonable term. But for Gam-

---

17. We do not presume to suggest the contours of the permanent injunction that may issue in the future. If the trial court is satisfied that the soil anchors will provide a permanent solution to the problem with the retaining walls, it is possible that no further corrective measures will be ordered by the trial court.

bone's construction of a dangerous wall, such encroachments would not be necessary.

Finally, Gambone objects to the "token sum" of $100 as the injunction bond amount. The purpose of the bond is to protect Gambone in the event it succeeds in having the injunction dissolved because it was improperly granted. 5 Goodrich–Amram 2d § 1531(b):1 (2002). Because we conclude the preliminary injunction was properly granted, the issue is moot. In any case, an injunction bond is not required where a political subdivision, such as the Township, is the party that has secured the injunction. Pa.R.C.P. No.1531(b).

## CONCLUSION

Based upon the foregoing analysis, we conclude that this is one of the rare instances in which a mandatory preliminary injunction was appropriate.[18] Accordingly, we affirm the trial court's orders dated March 7, 2005, March 14, 2005, and May 13, 2005.

## ORDER

AND NOW, this 24th day of February, 2006, the orders of the Court of Common Pleas of Montgomery County dated March 7, 2005, March 14, 2005, and May 13, 2005, in the above-captioned matter are hereby affirmed.

---

**18.** The Association argues in its brief that Gambone's appeal is moot since it has substantially complied with the trial court's orders. Because we have resolved the issuance of the mandatory preliminary injunction in favor of the Association, we need not reach the issue of mootness. In any event, there is nothing in the record before this Court to substantiate the Association's claim.