**PERROTTO BUILDERS,
LTD., Appellant**

v.

**READING SCHOOL DISTRICT
and Lobar, Inc.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2014.

Decided Jan. 9, 2015.

Joel C. Hopkins and Cory S. Winter, Harrisburg, for appellant.

John J. Miravich, Reading, for appellee Reading School District.

Diane M. Tokarsky, Harrisburg, for appellee Lobar, Inc.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Perrotto Builders, Ltd. (Perrotto) appeals the order of the Berks County Court of Common Pleas (trial court) that denied its request for a preliminary injunction to stop the implementation of a construction contract to renovate several school buildings in the Reading School District (School District). Perrotto contends that the School District did not adhere to the terms of its own bidding procedures because it changed the stated basis for awarding the contract after the bids were opened. The trial court refused to grant the preliminary injunction for several reasons. Chief among them was its finding that the School District did, in fact, follow the terms of its bid procedures. The gravamen of the trial court's decision was that Perrotto was not likely to prevail on the merits of its permanent injunction request and, further, that the grant of the preliminary injunction was more likely to cause harm than the harm that would be caused by its refusal. We affirm.

On October 15, 2013, the School District issued an Invitation to Bid for a "Miscellaneous Building Renovation & Repairs Project." There were two parts to the project which the School District identified as the "Group A" contract and the "Group B" contract. The Group A contract involved renovations to five elementary schools, two middle schools and one high school. It is this part of the project that generated the instant litigation.

The School District developed a 24–page form and a number of instructional documents for the submission of bids for the Group A contract.[1] The submission form required the bidder to provide a separate "base bid" and "alternate bids" for each of the eight schools. The base bid covered the work requested by the School District on a particular school building. The alternate bids were items that the School District could choose to add or deduct from the individual school project after opening the bids. The "total base bid" consisted of the sum of the eight individual bids for the Group A contract. Reproduced Record at 26a (R.R. ——). The bidding document also stated that "[the School District] may cho[o]se not to proceed with construction work at one or more of the above locations

---

1. The bidding documents included the bidding requirements and the proposed contract.

Reproduced Record at 18a.

based on the collective value of bids received." *Id.*

On December 17, 2013, the School District opened the bids and determined that Perrotto was the lowest bidder based on its total base bid for the Group A contract. However, the combined lowest bids for both the Group A and Group B contracts exceeded by $1.4 million the School District's budget of approximately $40 million. Accordingly, the School District had to revise the project, and its cost had to be reduced by more than $1.4 million.

John George, the executive director of the Berks County Intermediate Unit and superintendent of record for the School District,[2] testified at the preliminary injunction hearing about the School District's serious financial challenges. He explained that because of the School District's poor bond rating, it is not likely to be able to issue new bonds for the next seven to ten years. As a result, the School District needed to retain $7 million, out of the $40 million available, as a reserve for essential repairs that were expected to arise over the next seven to ten years. This reserve reduced the amount available for the project to approximately $33 million. George explained that the School District had over $400 million in existing bond debt and $25 million in budgeted debt.

Given these financial challenges, the School District decided to remove the five elementary schools from the Group A contract, which left two middle schools and the high school. It also selected one "deduct" alternate bid. After recalculating the total base bids on the three schools remaining in the project, the School District awarded the Group A contract to Lobar, Inc. as the lowest bidder. Perrotto's total base bid on the schools remaining in the project was higher than Lobar's total base bid by $201,450.

On February 28, 2014, two days after the School District awarded the Group A contract to Lobar, Perrotto filed an injunction action to challenge the School District's award of the Group A contract to Lobar. It also sought a preliminary injunction to stop any work on the project until its request for a permanent injunction was decided. On March 14, 2014, the trial court conducted a hearing on Perrotto's request for a preliminary injunction and denied it. Perrotto appealed to this Court.[3]

Perrotto raises several issues. First, Perrotto contends that the trial court erred in concluding that the bidding documents allowed the School District to remove work from the Project after the bids had been opened. Second, Perrotto argues that the trial court abused its discretion and erred as a matter of law in view-

---

**2.** George explained that while the School District faced financial distress, it initially refused any assistance from the intermediate unit. However, after a new board was elected in December 2013, the School District entered into a contractual arrangement with the intermediate unit. Under the contract, the intermediate unit was effectively responsible for all operations of the School District until June 30, 2014, with an option to renew.

**3.** Our standard of review of a trial court's decision to grant or deny a preliminary injunction is deferential, *i.e.*, whether the trial

court abused its discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995, 1000 (2003). We must determine whether the evidence establishes reasonable grounds for the decision of the trial court. *Id.* "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Roberts v. Board of Directors of School District of City of Scranton*, 462 Pa. 464, 341 A.2d 475, 478 (1975).

ing the present case as a disappointed-bidder case and not a taxpayer suit. Third, Perrotto argues that the trial court abused its discretion in balancing the harm by treating it as a financial matter only. Perrotto contends that excusing the School District from rebidding the project results in greater harm because it trivializes the sanctity of the public contracting process. Finally, Perrotto argues, in the alternative, that the trial court erred in finding that the bidding documents were clear and unambiguous.

In response, the School District and Lobar argue that Perrotto lacks taxpayer standing to challenge the award of the Group A contract because it does not own real property in the School District. The School District also argues that Perrotto's injunction action is barred by laches, noting that Perrotto did not seek to stay the trial court's decision during the appeal. The School District filed a motion to dismiss Perrotto's appeal, arguing that it is moot because the project is nearly completed.[4] Both appellees contend the trial court did not err in any respect.

■ We begin with a summary of the requirements for the issuance of a prelimi-nary injunction. First, the injunction must be necessary to prevent immediate and irreparable harm. Second, greater injury would result from not granting the injunction and the grant of an injunction must not substantially harm an interested party. Third, the injunction will restore the parties to the *status quo ante, i.e.,* their position before the alleged wrongful conduct. Fourth, the moving party must be likely to prevail on the merits. Fifth, the injunction must be reasonably suited to stop the harm. Finally, the moving party must prove that the injunction would not adversely affect the public interest. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995, 1001 (2003). Failure to satisfy any one of these requirements bars the preliminary injunction, making it unnecessary for the court to address the other injunction requirements. *Id.*

■ A school district's construction project is subject to competitive bidding and must be awarded to the lowest responsive and responsible bidder. Section 751(a.2) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* added by the Act of June 30, 2012, P.L. 684, 24 P.S. § 7–751(a.2).[5] The purpose of

---

4. On October 9, 2014, the School District filed a "Motion to Dismiss Appeal or, in the Alternative, to Supplement the Record." It sought to supplement the record with the affidavit of the School District's architect that described the project as close to 70% complete. It also sought to supplement the record with the affidavit of the School District's attorney stating that Perrotto neither sought to expedite the appeal nor to stay the trial court's order pending appeal. The School District's motion argued that the issue "is now moot." Motion to Dismiss, ¶ 8. Perrotto counters that the School District chose to proceed with the project despite knowing that it might lose an appeal and that it has sought to move its appeal forward as quickly as possible. Perrotto also explained that the School District could re-bid the project taking into account the completed work. Lobar joined the School District's motion.

5. It states in relevant part:

All construction, reconstruction, repairs, maintenance or work of any nature, including the introduction of plumbing, heating and ventilating, or lighting systems, upon any school building or upon any school property, or upon any building or portion of a building leased under the provisions of section 703.1, made by any school district where the entire cost, value or amount of such construction, reconstruction, repairs, maintenance or work, including labor and material, shall exceed a base amount of eighteen thousand five hundred dollars ($18,500), subject to adjustment under section 120, shall be done under separate con-

the competitive bidding process is to prevent "favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts." *Yohe v. City of Lower Burrell,* 418 Pa. 23, 208 A.2d 847, 850 (1965). Any deviation from the competitive bidding process requires the rebidding of the contract. *Hanisco v. Township of Warminster,* 41 A.3d 116, 126 (Pa. Cmwlth.2012).

Perrotto's claim for a preliminary injunction turns on whether the School District was permitted by the bidding documents to change the scope of the project and the calculation of the lowest total base bid after opening the bids. Perrotto argues that it was not permitted to do so, which constituted an irreparable injury not compensable in damages. It argues that a preliminary injunction was necessary to restore the *status quo ante* and will serve the public interest in preserving a fair and competitive bidding process. Perrotto contends that the School District should have awarded the Group A contract to Perrotto and thereafter issued a change order.

■ The gravamen of this appeal is whether the School District violated the bidding documents, which were prepared by its architect. As noted, the bid summary form stated that the School District had the right to "cho[o]se not to proceed with construction work at one or more of the above locations based on the collective value of bids received." R.R. 26a. The Instructions to Bid, Section 5.3, stated as follows:

**§ 5.3   Acceptance of Bid (Award)**

**§ 5.3.1** *It is the intent of the Owner to award a Contract to the lowest qualified Bidder provided the Bid has been submitted in accordance with the require-*

ments of the Bidding Documents and *does not exceed the funds available.* The Owner shall have the right to waive informalities and irregularities in a Bid received and to accept the Bid which, in the Owner's judgment, is in the Owner's own best interests.

**§ 5.3.2** *The Owner shall have the right to accept Alternates* in any order or combination, unless otherwise specifically provided in the Bidding Documents, *and to determine the low Bidder on the basis of the sum of the Base Bid and Alternates accepted.*

R.R. 22a (emphasis added). The bidding documents also contained "specifications" about the Project. "Specification Section 012300" defines "alternate" as follows:

**A.   Alternate:** *An amount proposed by bidders* and stated on the Bid Form for certain work defined in the bidding requirements that *may* be added to or *deducted from the base bid amount if Owner decides to accept a corresponding change either in the amount of construction to be completed* or in the products, materials, equipment, systems, or installation methods described in the Contract Documents.

1.   Alternates described in this Section are part of the Work only if enumerated in the Agreement.

2.   The cost or credit for each alternate is the net addition to or deduction from the Contract Sum to incorporate alternate into the Work. *No other adjustments are made to the Group 'A' Contract Sum with the exception of the option the Owner retains of removing one or more school building/sites as may be required to*

---

tracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice

has been given asking for competitive bids....
24 P.S. § 7–751(a.2).

*maintain the established total project budget.*

R.R. 106a (emphasis added).

The trial court concluded that the bid documents gave the School District the option "of removing one or more school buildings" from the project should it prove necessary to protect the School District's budget. We agree.

As bid, the project could not be done within the established total project budget of $40 million. Further, the School District had to reduce the budget amount from $40 million to $33 million in order to fund emergency repairs that were expected to develop until such time as it could issue new bonds. The School District removed the elementary schools from the scope of work involved and recomputed the total base bid on the remaining project for each bidder. These actions were not capricious or fraudulent. The School District applied the same standard to all bidders, and it had legitimate budgetary reasons for making the change. *Blumenschein v. Housing Authority of City of Pittsburgh*, 379 Pa. 566, 109 A.2d 331, 334–35 (1954) (holding that courts will not overturn discretionary acts by governmental bodies absent bad faith, fraud, capricious action or abuse of power). A revision to the scope of the project for budgeting reasons was expressly authorized by the School District's bidding documents.

Perrotto acknowledges that the School District could revise the scope of the work for budgetary reasons, but it contends that the School District had to award the contract solely on the basis of the lowest total base bid on the full project. Accordingly, the School District was required to award the contract to Perrotto and then use a change order to reduce the scope of work. We disagree. Nothing in the bidding documents supports the argument that the removal of buildings from the Group A contract had to be handled by a change order.

■ A change order is a "writing which states the parties' agreement with respect to the nature of the change, the amount of price adjustment and the amount of time adjustment." PHILIP L. BRUNER AND PATRICK J. O'CONNOR, JR., 2 BRUNER & O'CONNOR CONSTRUCTION LAW § 5:142 (Westlaw 2014). Change orders are contract modifications and, therefore, require the agreement of all parties. *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10, 15–16 (1968); *Trombetta v. Raymond James Financial Services, Inc.*, 907 A.2d 550, 559 (Pa.Super.2006). James Radwanski, the president and CEO of Perrotto, testified that Perrotto would not have objected to a change order. Notes of Testimony, March 14, 2014, at 165. However, Radwanski admitted on cross-examination that contractors have the right to object to change orders and that Perrotto had not given up its right to contest a change order. *Id.* at 178, 180–81.

There is no question that the project had to be awarded to the "lowest qualified bidder." R.R. 22a. It is also the case that the bid documents stated that the lowest bidder would be determined on the basis of the "sum of the Base Bid and Alternates accepted." *Id.* An "alternate" was defined by the specifications to include the removal of "one or more school building/sites as may be required to maintain the established total project budget." R.R. 106a. In short, the documents authorized the School District to determine the lowest bidder after it removed "one or more school buildings" from the project. *Id.* This is exactly what it did, and on the restructured project, Lobar was the lowest bidder.

Perrotto is unlikely to prevail on the merits of its claim that the School District violated the bid procedures. Accordingly, we conclude that the trial court did not err in denying Perrotto's motion for preliminary injunction.[6]

For these reasons, we affirm the trial court's decision.

## ORDER

AND NOW, this 9th day of January, 2015, the order of the Berks County Court of Common Pleas dated March 14, 2014, in the above-captioned matter is hereby AFFIRMED, and the School District's and Lobar's Motion to Dismiss Appeal is DENIED.

---

**6.** Because we affirm the trial court, we need not address the other issues raised by the School District and Lobar, such as Perrotto's standing. This Court may affirm the trial court's opinion if it is correct on any grounds. *Pompey v. Department of Transportation, Bureau of Driver Licensing*, 768 A.2d 372, 374 n. 6 (Pa.Cmwlth.2001). Further, we deny as moot the School District's motion to dismiss Perrotto's appeal.