# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| United Union of Roofers,<br>Waterproofers, and Allied Workers,<br>Local Union No. 37 | : | |
| | : | |
| v. | : | No. 2392 C.D. 2015 |
| | : | |
| North Allegheny School District,<br>Fox Chapel School District,<br>Montour School District | : | |
| | : | |
| Appeal of: Fox Chapel School<br>District | : | |
| | : | |
| United Union of Roofers,<br>Waterproofers and Allied Workers,<br>Local Union No. 37 | : | |
| | : | |
| v. | : | No. 2477 C.D. 2015 |
| | : | |
| North Allegheny School  District,<br>Fox Chapel School District and<br>Montour School District | : | |
| | : | |
| Appeal of: Montour School District | : | |
| | : | |
| United Union of Roofers,<br>Waterproofers, and Allied Workers,<br>Local Union No. 37 | : | |
| | : | |
| v. | : | No. 2493 C.D. 2015<br>Argued: November 14, 2016 |
| | : | |
| North Allegheny School District,<br>Fox Chapel Area School District,<br>and Montour School District | : | |
| | : | |
| Appeal of: North Allegheny School<br>District | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: April 18, 2017

Fox Chapel School District, North Allegheny School District, and Montour School District (collectively, School Districts) appeal an order of the Court of Common Pleas of Allegheny County (trial court) granting a preliminary injunction to United Union of Roofers, Waterproofers, and Allied Workers, Local Union No. 37 (Union). The preliminary injunction enjoined School Districts from conducting background checks mandated by the Public School Code of 1949[1] (School Code) and the Child Protective Services Law[2] on Union members assigned to roofing projects on School District property because School Districts did not show that the workers will have "direct contact with children." The trial court further ordered School Districts to take corrective action to permit Union's members who had been excluded by the unauthorized background checks to have access to the work sites. School Districts argue the trial court erred in granting the preliminary injunction because Union failed to establish any of the legal prerequisites for injunctive relief. We agree and will reverse the trial court's order.

Union represents roofers and operates a union hall by which it contracts out its members to roofing companies. In the summer of 2015, one company, Pennsylvania Roofing Company, successfully bid on a roofing project at Dorseyville Middle School in Fox Chapel Area School District. Pursuant to the project manual between Fox Chapel Area School District and the Pennsylvania Roofing Company, each employee of Pennsylvania Roofing Company was

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702.

[2] 23 Pa. C.S. §§6301-6386.

required to obtain criminal background checks as required by Section 111 of the School Code,[3] and Section 6344 of the Child Protective Services Law.[4] Reproduced Record at 249a-52a (R.R. ___). As a result of the background checks, eight Union members were denied clearance to work on the Dorseyville Middle School project.

Also in the summer of 2015, North Allegheny School District solicited bids for roofing projects at three locations: Marshall Middle School, Marshall Elementary School, and Bradford Elementary School. Three separate contracts were awarded. North Allegheny School District retained Massaro Construction Management Services to serve as construction manager for all three project sites. According to general conditions agreed to by Massaro and North Allegheny School District, all workers were required to obtain criminal background checks in accordance with Section 111 of the School Code, 24 P.S. §1-

---

[3] Section 111 of the School Code requires certain listed individuals to submit to state and federal criminal background checks prior to commencing employment. Section 111(a.1) states:

> Beginning April 1, 2007, this section shall apply to all current and prospective employes of public and private schools, intermediate units and area vocational-technical schools, including, but not limited to, teachers, substitutes, janitors, cafeteria workers, *independent contractors and their employes*, except those employes and independent contractors and their employes who have no direct contact with children.

Added by Section 1 of the Act of July 1, 1985, P.L. 129, *as amended*, 24 P.S. §1-111(a.1) (emphasis added). Section 111(b) and (c.1) of the School Code, 24 P.S. §§1-111(b), (c.1), discussed later in this opinion, sets forth the specific background check requirements.

[4] Section 6344(a.1) of the Child Protective Services Law, 23 Pa. C.S. §6344(a.1), requires an individual governed by Section 111 of the School Code, which includes "independent contractors and their employes," *see* n.3, *supra*, to submit to his employer a certification from the Department of Human Services as to whether he is named as an alleged perpetrator in a pending child abuse investigation or as the perpetrator of a founded report or an indicated report of child abuse. 23 Pa. C.S. §6344(b)(2).

2

111, and Section 6344 of the Child Protective Services Law, 23 Pa. C.S. §6344. As a result of the background checks, six Union members were denied clearance to work on the North Allegheny School District roofing projects.

Union filed a complaint seeking a declaratory judgment that: (1) Union's members are exempt from the requirements of Section 111 of the School Code and Section 6344 of the Child Protective Services Law; (2) the Criminal History Record Information Act[5] prohibits School Districts from refusing to employ Union's members based on criminal background checks; and (3) School Districts' exclusion of Union's members was a violation of due process. Union also sought a preliminary injunction to enjoin School Districts from disqualifying Union's members from School District projects based on criminal background checks.[6] Union alleged that its members are exempt from background checks under Section 111(a.1) of the School Code, 24 P.S. §1-111(a.1), and Section 6344(a.1) of the Child Protective Services Law, 23 Pa. C.S. §6344(a.1), because they do not have "direct contact with children."

The trial court conducted hearings on October 13, 2015, and October 23, 2015. Union did not present any evidence in support of its preliminary injunction request. School Districts presented evidence on their hiring practices and on the level of interaction Union workers have with students. Union did not dispute any evidence presented by School Districts; rather, Union maintained that this evidence showed that Union members were not in direct contact with children.

---

[5] 18 Pa. C.S. §§9101-9183.

[6] Montour School District had no active construction projects at the time Union filed its petition. However, at the October 23, 2015, trial court hearing, Montour School District conceded that it did background checks on Union members and that it excluded eight Union members based on those background checks. Montour School District remains a party to this matter.

Union relied upon this Court's unreported opinion in *Association of Pennsylvania State College and University Faculties v. Pennsylvania State System of Higher Education*, (Pa. Cmwlth., No. 407 M.D. 2015, filed 2/26/2016) (*APSCUF*) for the meaning of "direct contact with the children."[7] In *APSCUF* this Court ordered the Pennsylvania State System of Higher Education (PASSHE) to change its "Protection of Minors" policy to delineate between faculty positions that are subject to background checks under Section 6344 of the Child Protective Services Law due to direct contact with children, and those faculty positions that are exempt from these background checks.

Following the hearings, the trial court granted Union's motion for a preliminary injunction. The trial court ordered School Districts to provide previously disqualified Union members access to School Districts' work sites and to cease performing background checks on Union members unless the position involves direct contact with children. Specifically, the order stated:

> I therefore hereby preliminarily ENJOIN [School Districts], their agents, servants, employees, attorneys, and all others in active concert or participation with [School Districts], to take corrective action as necessary to permit [Union's] members previously excluded from current, ongoing, and future construction projects based on background checks to have access to the work sites on [School Districts'] properties and for the [School Districts] to set forth the relationship and rationale for exclusion of any of the [Union's] members due to a background check.
>
> I therefore hereby preliminarily ENJOIN [School Districts], their agents, servants, employees, attorneys, and all others in active concert or participation with [School Districts], from conducting background checks on [Union's] members and other

---

[7] The Pennsylvania Supreme Court granted a petition for allowance of appeal in *APSCUF*. That appeal remains pending at 10 MAP 2016.

construction workers, unless the [School Districts] can articulate and delineate positions where direct contact with children will occur, and then for only such specified workers.

Trial Court Order, 11/4/2015, at 5-6; R.R. 517a-18a. School Districts appealed.

On appeal,[8] School Districts argue that the trial court erred because Union did not establish any of the required elements for the issuance of a preliminary injunction. Those elements, which are well established, have been summarized by our Supreme Court as follows:

First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages.... Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings.... Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.... Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits.... Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity.... Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

---

[8] Our standard of review of a trial court's decision to grant or deny a preliminary injunction is deferential, *i.e.*, whether the trial court abused its discretion. *Perrotto Builders, Ltd. v. Reading School District*, 108 A.3d 175, 177 n.3 (Pa. Cmwlth. 2015). We must determine whether the evidence establishes reasonable grounds for the decision of the trial court. *Id.* "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id.* (quoting *Roberts v. Board of Directors of School District of City of Scranton*, 341 A.2d 475, 478 (Pa. 1975)).

5

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003). Failure to satisfy any one of these requirements bars preliminary injunctive relief, making it unnecessary for the court to address the other injunction requirements. *Id.*

We begin with a brief overview of the statutory law pertaining to school employee background checks. Pennsylvania requires background checks for employees of independent contractors who do business with public or private schools. There are three types of background checks for workers who have "direct contact with children."

Section 111 of the School Code requires contractors to submit on behalf of their employees: (1) a Pennsylvania State Police Request for Criminal Records Check, and (2) a Federal Criminal History Record Information Report. Section 111 states:

> (a.1) Beginning April 1, 2007, this section shall apply to all current and prospective employes of public and private schools, intermediate units and area vocational-technical schools, including, but not limited to, teachers, substitutes, janitors, cafeteria workers, *independent contractors and their employes, except those employes and independent contractors and their employes who have no direct contact with children.*
>
> ***
>
> (b) Administrators of public and private schools, intermediate units and area vocational-technical schools shall require prospective employes to submit with their employment application, pursuant to 18 Pa.C.S. Ch. 91 (relating to criminal history record information), a report of criminal history record information from the Pennsylvania State Police or a statement from the Pennsylvania State Police that the State Police central repository contains no such information relating to that person. Such report of criminal history record information shall be no more than five (5) years old. An applicant may submit a copy of the required information with the application for

6

employment. Administrators shall maintain a copy of the required information. *Administrators shall require contractors to produce a report of criminal history record information for each prospective employe of such contractor prior to employment.* A copy of the report of criminal history record information from the Pennsylvania State Police shall be made available to the applicant in a manner prescribed by the Department of Education.

\*\*\*

(c.1) Beginning April 1, 2007, administrators shall maintain on file with the application for employment a copy of the Federal criminal history record in a manner prescribed by the Department of Education. At a minimum, the Department of Education shall prescribe a method for applicants to submit a set of fingerprints to be transmitted to the Federal Bureau of Investigation for Federal criminal history record information pursuant to the applicable Federal law. The Federal criminal history record information report shall be no more than five (5) years old. Administrators shall maintain a copy of the required information and shall require each applicant to secure a Federal criminal history record information report that may not be more than five (5) years old at the time of employment. A copy of the Federal criminal history record information report shall be made available to the applicant in a manner prescribed by the Department of Education.

24 P.S. §1-111 (emphasis added).

In addition, the Child Protective Services Law requires another background check for individuals governed by Section 111 of the School Code, including employees of independent contractors, and that is a child abuse clearance. Section 6344 of the Child Protective Services Law states:

(a.1) School Employees. – This section shall apply to school employees as follows:

(1) School employees governed by the provisions of the act of March 10, 1949 (P.L. 30, No. 14) known as the Public School Code of 1949, shall be

7

subject to the provisions of Section 111 of the Public School Code of 1949, except that this section shall apply with regard to the certification required under subsection (b)(2).

\*\*\*

(b) Information to be submitted. – An individual identified in subsection … (a.1) … prior to the commencement of employment … shall be required to submit the following information to an employer, administrator, supervisor or other person responsible for employment decisions…

\*\*\*

(2) A certification from the [Department of Human Services] as to whether the applicant is named in the Statewide database as the alleged perpetrator in a pending child abuse investigation or as the perpetrator of a founded report or an indicated report.

23 Pa. C.S. §6344.

As noted, the trial court granted a preliminary injunction that did two things: (1) allowed previously disqualified Union members access to School Districts' work sites, and (2) prohibited School Districts from doing background checks on Union members unless the position applied for involved direct contact with children. In doing so, the trial court largely focused on the level of interaction between Union members and children at School Districts' project sites and determined that Union was likely to succeed on the merits of its declaratory judgment action because its members do not have direct contact with children.

We will not address that question. The underlying declaratory judgment proceeding will resolve the legal question of what constitutes "direct

contact with children" under the School Code.[9]   Likewise, it will resolve the factual question of whether Union members actually have that level of contact with children.   Accordingly, we decline to address these matters at this juncture. However, we will reverse the grant of the preliminary injunction because the injunction does not restore the parties to the status quo during the pendency of the underlying complaint.

The aim of a preliminary injunction is to preserve the status quo as it existed before the acts complained of, while a court decides on the merits of permanent injunctive or declaratory relief.  *The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Company, Inc.*, 893 A.2d 196, 204 (Pa. Cmwlth. 2006) (*Wayne Homeowners*).  The *status quo ante* is the "last actual, peaceable and lawful uncontested status which preceded the pending controversy." *Id.* at n.10 (quoting *Commonwealth v. Coward*, 414 A.2d 91, 99 (Pa. 1980)).

---

[9] The trial court found that Union members do not have direct contact with children by applying the standard set in *Association of Pennsylvania State College and University Faculties v. Pennsylvania State System of Higher Education*, (Pa. Cmwlth., No. 407 M.D. 2015, filed 2/26/2016), *appeal granted*, (Pa., No. 10 MAP 2016, filed February 12, 2016) (*APSCUF*).  In *APSCUF*, this Court noted that

> the definition of "direct contact [with children]" requires more than rare or incidental contact; it requires contact that is "routine" or akin to caring for, supervising, guiding, or controlling a child.

*APSCUF*, slip. op. at 9.  However, *APSCUF* dealt solely with background checks under the Child Protective Services Law for faculty members of the Pennsylvania State System of Higher Education.  The instant case is driven primarily by the School Code, which defines "direct contact with children" as

> [t]he possibility of care, supervision, guidance or control of children or routine interaction with children.

Added by Section 1 of the Act of October 22, 2014, P.L. 2624, *as amended*, 24 P.S. §1-111.1. By contrast, the Child Protective Services Law defines "direct contact with children" as "[t]he care, supervision, guidance or control of children as routine interaction with children."  23 Pa. C.S. §6303.  It omits the phrase "possibility of" found in the School Code definition.

Here, the trial court found that the injunction was necessary to restore the parties to the *status quo ante*. The order states:

> The granting of this injunction will prevent the misapplication of the School Code against [Union] and its members and *put the parties at their prior status* of [School Districts] being required to show a causal connection between any criminal offenses and the position for which employees are to work to justify an exclusion.

Trial Court Order, 11/4/2015, at 3; R.R. 515a (emphasis added). School Districts contend that the trial court's assertion that the preliminary injunction returned the parties to "their prior status" is simply wrong. By prohibiting School Districts from doing background checks and requiring reinstatement of previously disqualified Union members, the trial court changed the *status quo*.

School Districts presented evidence of their standard practice in implementing background checks on prospective employees. They note that in 2011, the legislature amended Section 111 of the School Code to change the disqualification periods for current or prospective employees based on convictions for certain offenses.[10] Chelsea D'Amico, Human Resource Specialist for Employment and Recruitment at North Allegheny High School, testified that since the 2011 amendment School Districts have used a checklist to determine whether a prospective employee satisfies the background check requirements. On direct examination, D'Amico testified as follows:

> [Counsel]: Are you involved in background checks in your position as H[uman] R[esources] specialist?
>
> [D'Amico]: Yes.

---

[10] *See* Section 1 of the Act of June 30, 2011, P.L. 112, *as amended*, 24 P.S. §1-111.

[Counsel]: Can you generally explain for the Court what you do during this process?

[D'Amico]: Yes. I take the documents received from the potential new employee and I compare them to the School Code Section 111 to find out if their clearances are approved or if they're denied.

\*\*\*

[Counsel]: Did you perform any background checks in the summer of 2015?

[D'Amico]: Yes.

[Counsel]: From whom did you receive names of the individuals to be checked?

[D'Amico]: I received the names from the project manager.

[Counsel]: And can you describe that specific process for the Court?

[D'Amico]: Sure. She would [e]mail me the registration ID number for the FBI clearance. I would then go into the Cogent database online and review the official rap sheet in the system, compare it to Section 111 and determine if they are approved or denied. Then I would send the results back to the project manager and let that person know who can or cannot work.

Notes of Testimony, 10/13/2015, at 36-37 (N.T. ___ ); R.R. 619a-20a. On cross-examination, D'Amico further stated that School Districts have used the same background check process since the legislature amended Section 111 in 2011:

[Counsel]: Ma'am, how long have you been doing the H[uman] R[esources] checks for employment with North Allegheny?

[D'Amico]: Six years.

[Counsel]: And going back before December of this past year, was the checklist you used the same or different?

11

[D'Amico]: No, we did not have – well, what do you mean by checklist?

[Counsel]: Well, did anything change in the offenses that you looked at or what you used to exclude individuals?

[D'Amico]: No, that Act 24[11] came around in 2011, so that has been in place since 2011.

N.T. 10/13/2015 at 42, 43; R.R. 625a-26a.

By enjoining School Districts from performing their standard background checks, the trial court disturbed the status quo. As established by the evidence, since at least 2011 School Districts have been doing background checks on employees of independent contractors required by Section 111 of the School Code without ascertaining whether those employees will have direct contact with children.[12] Requiring School Districts "to show a causal connection between any criminal offenses and the position for which employees are to work to justify an exclusion" does not preserve the status quo. Instead, it institutes a new *status quo* by revising School Districts' longstanding background check practices.

For the reasons stated above, this Court reverses the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

Judge Wojcik did not participate in the decision in this case.

---

[11] D'Amico refers to the 2011 amendments to Section 111 of the School Code. *See* Section 1 of the Act of June 30, 2011, P.L. 112, *as amended*, 24 P.S. §1-111.

[12] School Districts note that the contracts for the relevant projects require that all prospective workers pass the background checks required under the School Code and the Child Protective Services Law. R.R. 249a-53a.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| United Union of Roofers, Waterproofers, and Allied Workers, Local Union No. 37 | : : : | |
| | : : | |
| v. | : | No. 2392 C.D. 2015 |
| | : : | |
| North Allegheny School District, Fox Chapel School District, Mountour School District | : : : : | |
| | : : | |
| Appeal of: Fox Chapel School District | : : | |
| | : : | |
| United Union of Roofers, Waterproofers and Allied Workers, Local Union No. 37 | : : : : | |
| | : : | |
| v. | : | No. 2477 C.D. 2015 |
| | : : | |
| North Allegheny School District, Fox Chapel School District and Montour School District | : : : : | |
| | : : | |
| Appeal of: Montour School District | : | |
| | : : | |
| United Union of Roofers, Waterproofers, and Allied Workers, Local Union No. 37 | : : : : | |
| | : : | |
| v. | : | No. 2493 C.D. 2015 |
| | : : | |
| North Allegheny School District, Fox Chapel Area School District, and Montour School District | : : : : | |
| | : : | |
| Appeal of: North Allegheny School District | : : | |

# **O R D E R**

AND NOW, this 18th day of April, 2017, the order of the Court of Common Pleas of Allegheny County dated November 4, 2015 in the above-captioned matter is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

United Union of Roofers,                    :
Waterproofers, and Allied Workers,          :
Local Union No. 37                          :
                                            :
            v.                              :
                                            :
North Allegheny School District,            :
Fox Chapel School District,                 :
Montour School District                     :
                                            :
Appeal of:                                  :    No. 2392 C.D. 2015
Fox Chapel School District                  :

United Union of Roofers,                    :
Waterproofers, and Allied Workers,          :
Local Union No. 37                          :
                                            :
            v.                              :
                                            :
North Allegheny School District,            :
Fox Chapel School District, and             :
Montour School District                     :
                                            :    No. 2477 C.D. 2015
Appeal of:  Montour School District         :

United Union of Roofers,                    :
Waterproofers, and Allied Workers,          :
Local Union No. 37                          :
                                            :
            v.                              :
                                            :
North Allegheny School District,            :
Fox Chapel Area School District,            :
and Montour School District                 :
                                            :
Appeal of:  North Allegheny                 :    No. 2493 C.D. 2015
School District                             :    Argued:  November 14, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

DISSENTING OPINION
BY JUDGE COSGROVE                    FILED:  April 18, 2017

As I believe the Majority misreads the essence of "status quo" within the injunctive context, I must respectfully dissent.  In its opinion, the trial court found that injunctive relief was necessary "to put the parties at their prior status," *See Majority Opinion,* slip op. 10, i.e., where the determination of whether workers were to be excluded due to criminal history was based on application of the School Code and centered on the issue of whether the worker would have "direct contact with children."  The Majority, however, opines that "status quo" refers to the ability of the School Districts to conduct background checks regardless of whether the individual involved will have such contact with children or not.  In this instance, we are obliged to defer to the trial court's assessment since there is nothing to suggest it abused its discretion.  *Perrotto Builders, Ltd. v. Reading School District*, 108 A.3d 175, 177 n.3 (Pa. Cmwlth. 2015).  As the Majority oversteps these parameters, I am compelled to dissent.

_____
JOSEPH M. COSGROVE, Judge